296 So.2d 619 (1974)
Houston R. WHITE, Appellant,
v.
Mary S. WHITE, Appellee.
No. U-273.
District Court of Appeal of Florida, First District.
June 20, 1974.
*620 Carlton L. Welch, Jacksonville, for appellant.
William T. Kaler and Ralph Sistrunk, of Sistrunk & Kaler, Jacksonville, for appellee.
BOYER, Judge.
We are called upon to review an order of the trial court requiring a father to pay to the mother of a "child" over 18 years of age support for that "child." Dates are important. On April 28, 1969 a final judgment of divorce was entered in a proceeding in which the appellant here was plaintiff and the appellee defendant. The final judgment awarded to the defendant mother custody of the party's son, then 15 years of age. The final judgment was unusual in that although it required the payment of child support in a specified sum there was no provision for termination upon attaining age 18, age 21, upon becoming sua juris, self-supporting or otherwise. On January 5, 1970 an order was entered modifying the final judgment by reducing "child support" payments to $100 per month, which order provided that such payments should continue "until further order of the court." On August 31, 1971 another order modifying the final judgment was entered by which plaintiff father was required to pay to the defendant mother the sum of $115 "as and for support of the minor child of the parties." That order is silent as to any termination date and contains no provision that the payment shall continue "until further order of the court" as was provided in the previous order. On July 1, 1973 Chapter 73-21, removing the disability of non-age to persons 18 years of age became effective. That statute provides as follows:
"Section 1. Subsection (14) of section 1.01, Florida Statutes, is created to read:
"1.01 Definitions.  In construing these statutes and each and every word, phrase or part hereof, where the context will permit:
"(14) The word `minor' includes any person who has not attained the age of 18 years.
"Section 2. The disability of nonage is hereby removed for all persons in this state who are 18 years of age or older and they shall enjoy and suffer the rights, privileges and obligations of all persons 21 years of age or older except as otherwise excluded by the Constitution of the State of Florida immediately preceding the effective date of this act. Provided, however, this act shall not prohibit any court of competent jurisdiction from requiring support for a dependent person beyond the age of 18 years; and provided further that any crippled child as defined in chapter 391, Florida Statutes, shall receive benefits under the provisions of said chapter until age 21, the provisions of this act to the contrary notwithstanding.

*621 "Section 3. This act shall operate prospectively and not retrospectively and shall not affect the rights and obligations existing prior to the effective date of this act.

"Section 4. Any law inconsistent herewith is hereby repealed to the extent of such inconsistency. In editing the manuscript for the next revision of the Florida Statutes, the statutory revision and indexing service is hereby directed to conform existing statutes to the provisions of this act.
"Section 5. In the event that any provision or application of this act is held to be invalid, it is the legislative intent that the other provisions and applications hereof shall not be thereby affected.
"Section 6. This act shall take effect July 1, 1973.
"Approved by the Governor May 9, 1973." (Emphasis added)
The son of the parties became 18 years of age on February 6, 1972.
Following the effective date of the above mentioned statute plaintiff-father discontinued making payments, on advice of counsel, on the assumption that the "child" was then legally an adult and that therefore "child support payments" were not required. The defendant-mother procured the issuance of a rule to show cause and on October 5, 1973 the trial judge found the plaintiff to be in arrears in the total amount of $460 through the payment due August 2, 1973 and allowed 15 days for payment thereof. He further ordered the plaintiff to pay an attorney's fee of $50 for the defendant's attorney incident to the bringing of the rule to show cause.
Via some vehicle not quite clear in the record, a further hearing was held on October 7, 1973 at which hearing the evidence revealed that the son of the parties was a sophomore attending Florida Junior College; that he lived with his mother and stepfather who provided him with the necessities of life; that he had theretofore worked but had been injured on the job resulting in payment of $72 bi-weekly as workmen's compensation; that he had no permanent disability and since his injury had worked for a construction company as a laborer earning $3.80 per hour which job he had voluntarily quit to become a student. The son testified that he was enrolled taking prelaw courses with the anticipation of ultimately attending law school. The plaintiff did not contend that he was financially unable to make the payments but stated that he hadn't been "treated like a father" and essentially had lost control of his son.
On October 23, 1973 the trial judge entered an order finding that since the son was attending junior college and was not employed he was entitled to the support of $115 per month from plaintiff-father and further stating that the son "in the court's opinion, is entitled to a college education at the expense of his parents."
This appeal followed.
The Supreme Court of Florida, in Perla v. Perla, Sup.Ct.Fla. 1952, 58 So.2d 689, had occasion to consider a court's order wherein the father of a 33 year old mentally retarded child was sought to be required in a divorce proceeding to pay support to the mother of the child. The court there stated:
"Generally, the obligation of a parent to support a child ceases when the child reaches majority, but an exception arises when the child is, from physical or mental deficiencies, unable to support himself. The overwhelming weight of authority supports the view, however, that a divorce suit is not the proper proceeding where the responsibility may be fixed and the burden imposed. Borchert v. Borchert, 185 Md. 586, 45 A.2d 463, 162 A.L.R. 1078.
"An action for divorce is statutory, and we can find nothing in our laws * * * warranting an order requiring *622 a father to pay to his erstwhile wife money for the support of an adult child, even though the child is mentally and physically afflicted. The mother should not, in a divorce proceeding, be made a medium through which payments coerced from the father would reach an adult child.
* * * * * *
"We do not hold that for all time the father, in the transaction with the mother, managed to shrug off any responsibility for supporting the child, but only that now, and by a decree in this suit, the court should not require him to compensate the mother for what the care and custody may be costing her." (at page 690, of 58 So.2d)
Again, in Zalka v. Zalka, Sup.Ct.Fla. 1958, 100 So.2d 157, that court, citing Perla v. Perla, supra, restated the proposition that a mother's right to receive support money "would automatically terminate upon the son's attaining his majority."
This Court, in Fincham v. Levin, Fla. App. (1st) 1963, 155 So.2d 883, held that a divorced father may be required to contribute to the support of his unmarried adult daughter who was congenatively mentally and physically unable to care for and support herself, saying however:
"* * * He [appellant] cites the annotation in 1 A.L.R.2d at page 914 in support of the proposition that the common law went no further than to impose on parents the duty of supporting their minor children, and that as a general rule there is no obligation on the part of a parent to support an adult child. This is unquestionably the rule with respect to able-bodied children. * * *" (at page 884) (Emphasis added)
In Carmody v. Carmody, Fla.App. (1st) 1970, 230 So.2d 40, this Court held that "by operation of law" a son 20 years of age whose disabilities of non-age had been removed, a sophomore in college with approximately $3,000 in savings was "not entitled to parental support as a matter of law."
In a per curiam opinion this Court, in Register v. Register, Fla.App. (1st) 1970, 230 So.2d 684, said:
"It is discretionary with the trial court as to whether any allowance should be made to defray college expense, with many factors entering into the question, one being whether the child is college material or not. These factors as well as others will continue to exist until a dependent child reaches his or her majority and must be determined by the court periodically when and if the needs arise and shall be dependent also upon the father's financial ability to supply such needs." (at page 684) (Emphasis added)
In Bosem v. Bosem, Fla.App. (3d) 1972, 269 So.2d 758 the court, in considering an "open ended" support order, said:
"* * * Of course, the provisions must be limited to the period of time before the children become twenty-one years old. * * *" (at page 763)
In Field v. Field, Fla.App. (2d) 1974, 291 So.2d 654, opinion filed March 22, 1974, our sister court of the Second District held that the trial court erred in modifying a final judgment by changing the termination date of child support payments from age 21, as provided in the final judgment of divorce, to age 18, saying:
"* * * This modification, apparently made by the trial court sua sponte, is a misinterpretation of the applicable law. Chapter 73-21, Laws of Florida, provides that the change in the minimum age of majority is to operate prospectively and not retrospectively and is not to affect pre-existing rights. The change in the instant case is not justified by the record and must be reversed."
As noted, the final judgment in the Field case specifically provided that the child support payments continue until the child *623 reached age 21. The final judgment in the case sub judice did not so provide.
In Finn v. Finn, Fla.App. (3d) 1974, 294 So.2d 57, opinion filed April 2, 1974, the Third District Court of Appeal had occasion to consider the exact point here involved under identical circumstances, except that it appears from a reading of that case that the initial final judgment provided for support payments until the children became 21 years of age. That court affirmed an order of the trial judge denying the father's post-judgment motion to terminate child support payments when the children attained 18 years of age and required such payments to continue until they attained age 21. The court there stated:
"First, Section 2, Ch. 73-21, Fla. Stat. authorizes a court to provide dependent persons beyond the age of 18 with support and, second, Section 3 clearly indicates that the statute was not to have an impact on obligations existing prior to the effective date of the act. Prior to July 1, 1973, the appellant was obligated to support the children of the marriage until they reached the age of 21 years. Under the provisions of the act, these obligations were not to be disturbed."
It was stipulated in the Finn case that the subject children were neither physically nor mentally disabled. They were both over 18 years of age and were attending college. It would appear therefore that the court there considered the word "dependent" as used in Section 2 of Chapter 73-21, Laws of 1973, to mean without independent means of support as distinguished from physical or mental disability. We do not think that such was the legislative intent. The same sentence, which constituted the proviso in said Section 2, provides for court ordered support "for a dependent person beyond the age of 18 years" and for benefits under Chapter 391, Florida Statutes, for "any crippled child". It appears to us therefore that by use of the term "dependent person" the legislature intended a person over 18 years of age unable by reason of physical or mental incompetency or inability to be independent.
The court, in the Finn case, recited that Section 3 indicates that the statute was not to have an impact on obligations existing prior to its effective date and that prior to said date the father of said children was obligated to support said children until they attained age 21. However, in the case sub judice, there was no such obligation. As stated in the first paragraph of this opinion the original final judgment was silent as to the period for which the support payments were to continue. The first order of modification provided that said payments should continue "until further order of the court." The subsequent order of modification was, like the final judgment, silent as to any termination date. Accordingly, we find that Section 3 of Chapter 73-21, Laws of Florida 1973 has no application under the facts of the case sub judice inasmuch as there were no "rights and obligations existing prior to the effective date" of the Act.
As stated elsewhere in this opinion the trial judge's order giving rise to this appeal found that since the son was attending college and not employed he was entitled to support from his father, and further "in the court's opinion, is entitled to a college education at the expense of his parents." It is certainly desirable and laudable for parents to encourage their offspring to get a college education if he or she is college material. However, there are many parents who enjoy complete domestic tranquility but who do not, either from personal choice or inability or otherwise, give their children a college education. The fact that domestic whirlwinds cause a severance of the marriage does not enhance the rights of the children nor alter the obligations of the parents. Certainly if the parents were still married and enjoying domestic harmony a suit would not lie by the child or either parent to require parental *624 support for a college education. Neither may such be accomplished in a dissolution of marriage forum.
When the legislature, in its infinite wisdom, emancipated 18 year old children, it specifically provided that they enjoy and "suffer" the rights, privileges "and obligations" of persons 21 years of age and older. We find nothing in the act which appears to us to have been intended to afford 18 year old adults any bonus rights or privileges not enjoyed by persons over 21 years of age.
In the case sub judice the harassed father testified that his son had ceased to treat him like a father and that he had essentially lost control of his son. The tightening of parental purse strings is often a very effective cure for such a disease. If the son deserves his father's financial help we would encourage and urge the father, appellant here, to respond. However, inasmuch as the 18 year old adult in the case sub judice is mentally and physically able and has demonstrated his ability to be gainfully employed, and since there was no requirement of support to age 21 nor requirement of support during the attaining of a college education in the orders of the Circuit Court which preceded the effective date of Chapter 73-21, F.S., we do not construe the law as empowering us, or the trial judge, to require the appellant so to do.
The appellee's motion for attorneys' fees incident to this appeal is denied.
Reversed.
RAWLS, C.J., concurs.
McCORD, J., dissents.
McCORD, Judge (dissenting).
We have before us an order of the trial judge entered after hearing on a rule to show cause why appellant should not be held in contempt for failure to pay support payments for his son as previously ordered by the court. The only basis appellant gave for abruptly discontinuing payments was that his son had reached the age of 18 years and under Chapter 73-21, Laws of Florida, he was no longer a minor. The previous support order directed that appellant pay $115 per month support and did not state a termination date. At the time of that order, a child did not reach his majority under the law until age 21.
Sections 2 and 3 of said Chapter 73-21 provide as follows:
"Section 2. The disability of nonage is hereby removed for all persons in this state who are 18 years of age or older and they shall enjoy and suffer the rights, privileges and obligations of all persons 21 years of age or older except as otherwise excluded by the Constitution of the State of Florida immediately preceding the effective date of this act. Provided, however, this act shall not prohibit any court of competent jurisdiction from requiring support for a dependent person beyond the age of 18 years; and provided further that any crippled child as defined in chapter 391, Florida Statutes, shall receive benefits under the provisions of said chapter until age 21, the provisions of this act to the contrary notwithstanding.
Section 3. This act shall operate prospectively and not retrospectively and shall not affect the rights and obligations existing prior to the effective date of this act."
It is my view that since the operation of the new statute is prospective rather than retroactive, and under the previous order at the time it was entered the father was obligated to make support payments until his son reached age 21, and since the new statute further authorizes the court to require support for a dependent person beyond the age of 18 years, the statute did not nullify the court's previous support order upon the son reaching age 18. If appellant desired at that time to have the support modified or terminated on the ground that the former minor was self-supporting, *625 he should have filed a petition seeking such relief. Upon the filing of such petition, it then would become the duty of the trial judge under the evidence presented at a hearing thereon to determine the question of dependency in the exercise of his sound discretion considering the circumstances of the parents and the needs of their offspring. The question of whether or not the offspring is satisfactorily pursuing an education to become better equipped for life and the reasonableness of such pursuit would be relevant to the question of his dependency. The legislature in the above quotation from Section 2 of the statute used the words "dependent person." It did not limit dependent persons to disabled persons or to disabled dependent persons, although it could have done so if it had intended such limited interpretation. It is my view that the legislature did not intend an abrupt and radical change in the law of support previously existing prior to the effective date of the new act.
In the absence of a petition for termination of support and a final order by the court approving same, appellant had no authority to terminate the support payments previously ordered. I would affirm.