387 So.2d 500 (1980)
William R. NICOLAY, Appellant,
v.
Jacquelyn Ann NICOLAY, Appellee.
No. 79-656.
District Court of Appeal of Florida, Second District.
August 27, 1980.
Douglas H. Smith, Lake Alfred, for appellant.
Robin Gibson, of Gibson & Connor, Lake Wales, for appellee.
GRIMES, Judge.
This is an appeal from an order which modified alimony award so as to provide Mrs. Nicolay with funds to send her children to college.
In November, 1973, Dr. Nicolay filed a petition for dissolution of marriage. The following April, the court entered a final judgment of dissolution in which it awarded custody of the parties' two minor daughters to Mrs. Nicolay. The judgment provided $500 a month support for the children until the youngest reached age eighteen and awarded Mrs. Nicolay $500 a month permanent alimony. The court noted that the alimony would be subject to modification, and it reserved jurisdiction to modify child support, particularly with reference to the children's needs for higher education.
Following the dissolution proceedings, Dr. Nicolay remarried and moved to Missouri. He later moved to North Carolina to become chief of nuclear medicine at a Veteran's Administration hospital. Mrs. Nicolay has not remarried and is presently working as a nurse in Winter Haven. In the spring of 1977, the oldest child graduated from high school with an excellent scholastic record *501 and prepared to enter college. Mrs. Nicolay requested assistance with college expenses from Dr. Nicolay, but he refused. She then filed a petition for modification of child support seeking help with those expenses, in which she alleged that all applications for grants and scholarships had been denied because of Dr. Nicolay's income. Dr. Nicolay thereafter agreed to pay $3,500 toward the girl's college education for the 1977-1978 school year, and Mrs. Nicolay voluntarily dismissed the modification petition.
In February, 1978, Dr. Nicolay filed a petition for modification of child support and alimony, alleging that his income had fallen since the entry of the final judgment. Mrs. Nicolay answered and counterpetitioned for modification of support, seeking assistance to meet college expenses for both girls since the younger one, like her sister, had now completed high school with an excellent record and wished to further pursue her education. After a hearing, the court entered an order in which it terminated child support because both daughters had reached age eighteen, denied Dr. Nicolay's petition for modification of alimony, and denied Mrs. Nicolay's counterpetition without prejudice for her petition for increase in alimony. In so doing, the court stated that it felt Dr. Nicolay should assist his daughters with their college expenses but that it doubted its power to force him to do so through the medium of child support because the girls were no longer minors.
In response to the court's invitation, Mrs. Nicolay filed a petition for modification of alimony, alleging a change in circumstances owing to her need to fund her daughters' college education. After a hearing, the court entered an order on March 16, 1979, in which it increased the periodic alimony by $585 a month retroactive to September 1, 1978, for two years from that date or until further order of the court.[1] It is from that order that Dr. Nicolay now appeals.
Dr. Nicolay does not challenge the court's finding that he has the ability to pay the increased alimony award. Therefore, we have before us only the question of whether the court had the power to order an increase in Mrs. Nicolay's alimony award solely for the purpose of allowing her to furnish her daughters who had turned eighteen and thus were no longer minors with a college education.
Dr. Nicolay argues that the court did indirectly what it could not do directly, namely force a divorced parent to provide a college education to a child who has reached the age of eighteen. There are cases, including some from our court, which have laid down such a rule. E.g., Kowalski v. Kowalski, 315 So.2d 497 (Fla. 2d DCA 1975). Yet this rule has not been universally accepted and, in fact, appears to rest on a tenuous foundation.
Prior to July 1, 1973, the question of whether a court could order a parent who had the ability to do so to provide his child with a college education was seldom if ever raised. Section 61.13, Florida Statutes (1979), then provided, as it does now, that in a dissolution proceeding a court could require a parent who owed a duty of support to a child to pay such support as was necessary and equitable. Parents owed a duty of support to their minor children, and children did not reach their majority until age twenty-one. Heckes v. Heckes, 129 Fla. 653, 176 So. 541 (1937); Beekman v. Beekman, 53 Fla. 858, 43 So. 923 (1907). Thus, since a child following a normal educational pattern would usually have almost finished the requirements for a college degree by the time he reached age twenty-one, the courts could clearly order his parents to support him through college. Of course, today a parent's duty of support to the minor child remains unchanged. However, the age of majority has changed. On July 1, 1973, Chapter 73-21, Laws of Florida, went into effect. It lowered the age of majority from twenty-one to eighteen. § 1.01(14), Fla. Stat. (1979). It also created Section 743.07, Florida Statutes (1979), which reads as follows:

*502 (1) The disability of nonage is hereby removed for all persons in this state who are 18 years of age or older, and they shall enjoy and suffer the rights, privileges, and obligations of all persons 21 years of age or older except as otherwise excluded by the state constitution immediately preceding the effective date of this section.
(2) This act shall not prohibit any court of competent jurisdiction from requiring support for a dependent person beyond the age of 18 years; and any crippled child as defined in chapter 391 shall receive benefits under the provisions of said chapter until age 21, the provisions of this section to the contrary notwithstanding.
(3) This section shall operate prospectively and not retrospectively, and shall not affect the rights and obligations existing prior to July 1, 1973.
What Chapter 73-21 has done to a divorce court's power to order support for a child between the ages of eighteen and twenty-one in order to allow him to go to college has been the subject of much discussion in the appellate courts of this state. One of the first cases to deal with the issue after the lowering of the age of majority was White v. White, 296 So.2d 619 (Fla. 1st DCA 1974). In that case, the trial court entered a final judgment of divorce on April 28, 1969, which required payment of child support to the wife but contained no provision for termination of that support. On January 5, 1970, the court entered an order reducing child support payments to $100 a month which provided for the payments to continue until further order of the court. On August 31, 1971, the court entered another order raising the support to $115 a month. That order was silent as to a termination date. Following the effective date of Chapter 73-21, the father discontinued making payments for the support of the son who by that time had become eighteen years old and was a sophomore attending Florida Junior College. The mother thereafter asked the court to require the father to continue making payments and the trial judge entered an order finding that since the son was attending junior college and was not employed he was entitled to the support of $115 per month from his father. The judge observed that he believed the boy to be entitled to a college education at the expense of his parents.
On these facts, the appellate court reversed and held that the provisions of Section 743.07(1) which emancipated eighteen year olds prevented a court from ordering a parent to provide support for the college education of his eighteen year old children. The court also ruled that Section 743.07(2) which allowed a court to order support for dependent adult children referred only to adult children who were mentally or physically handicapped and not to those who simply were without independent means of support. Finally, the court held that Section 743.07(3) which provided that the other provisions of Section 743.07 would not affect rights and obligations existing prior to July 1, 1973, was not applicable because the orders of the trial court had set no termination date and thus had not obligated the father to pay support until age twenty-one.
Judge McCord dissented from the majority opinion in White. He expressed the view that Section 743.07(3) was applicable to the case and that in any event, Section 743.07 did not automatically cut off the responsibility of a parent to provide a college education for a child eighteen years of age. He said:
It is my view that since the operation of the new statute is prospective rather than retroactive, and under the previous order at the time it was entered the father was obligated to make support payments until his son reached age 21, and since the new statute further authorizes the court to require support for a dependent person beyond the age of 18 years, the statute did not nullify the court's previous support order upon the son reaching age 18. If appellant desired at that time to have the support modified or terminated on the ground that the former minor was self-supporting, he should have filed a petition seeking such relief. Upon the filing of such petition, it then *503 would become the duty of the trial judge under the evidence presented at a hearing thereon to determine the question of dependency in the exercise of his sound discretion considering the circumstances of the parents and the needs of their offspring. The question of whether or not the offspring is satisfactorily pursuing an education to become better equipped for life and the reasonableness of such pursuit would be relevant to the question of his dependency. The legislature in the above quotation from Section 2 of the statute used the words "dependent person." It did not limit dependent persons to disabled persons or to disabled dependent persons, although it could have done so if it had intended such limited interpretation. It is my view that the legislature did not intend an abrupt and radical change in the law of support previously existing prior to the effective date of the new act.
296 So.2d at 624-25.
Less than a year after the White decision, the supreme court issued its opinion in the case of Finn v. Finn, 312 So.2d 726 (Fla. 1975). There, the trial court entered a final judgment of dissolution on December 14, 1971, and, among other things, ordered the father to pay the mother child support of $100 a week for their twin sons. On November 29, 1973, the court entered an order on the mother's motion for enforcement of the child support provisions of the final judgment. The order recited that the parties had agreed that the boys attained age eighteen on September 29, 1973, and that the father stopped paying child support as of that date. Also, the order stated that the parties stipulated that the boys were attending college and that neither was physically or mentally handicapped. The court granted the mother's motion and ordered the father to pay all arrearages and to pay the $100 a week child support until the children attained the age of twenty-one.
The supreme court affirmed,[2] holding that Section 743.07(3) prevented Section 743.07(1) from applying to the facts of the case since the final judgment had been rendered prior to its effective date and had impliedly extended the duration of legal dependency until the boys reached age twenty-one.
Because of this holding, it would not have been necessary for the supreme court to go further as had the court in White to determine whether Section 743.07 cut off a parent's obligation of support at age eighteen in all cases. However, in dictum the court observed that, "The conclusion in White v. White, supra, that `a dependent person' is limited to one who is dependent because of physical or mental incompetence or inability is much too narrow." The court then went on to quote with approval the portion of Judge McCord's dissent in the White case which we have set out above. Finally, the court said:
In this age of sophisticated technology and economic complexity with the necessity of development of special skills to qualify for pursuit of a trade, profession or to obtain employment, a person over 18 and less than 21 may indeed be dependent on the help of others to obtain what education and training is needed to be competitive in the economic system in which he must make his way. He and society have a right to expect his parents to meet that need to the reasonable extent of their ability to do so, and nothing in Chapter 73-21 says otherwise.
312 So.2d at 731.
Although the supreme court has not again spoken on this issue, the district courts of appeal have continued the debate begun in White and Finn. In the case of Dwyer v. Dwyer, 327 So.2d 74 (Fla. 1st DCA 1976), the court again reversed an order of the trial court continuing the support for a child between the age of eighteen and twenty-one years who was planning to enter college. Yet the court seemed to acknowledge the dictum contained in Finn *504 when it noted that the trial judge had made no finding of dependency of the eighteen year old child and stated, "The mere fact that a person is attending a university or college does not render him or her dependent." 327 So.2d at 75. In a later case, Watterson v. Watterson, 353 So.2d 1185 (Fla. 1st DCA 1977), the court moved further toward the position of the supreme court when in reversing a support award to a child beyond the age of twenty-one, it said:
The decision of Finn v. Finn, 312 So.2d 726 (Fla. 1975) which adopted the dissenting opinion in White v. White, 296 So.2d 619 (Fla. 1st DCA 1974) simply holds that the law which changed the age of majority from 21 to 18 did not change the previous law which enabled a trial judge to order support for a dependent child until he reaches 21, providing the child pursues in good faith the furtherance of his education and has a need for help beyond his own reasonable capacity to provide for himself.
353 So.2d at 1188.
The Third District Court of Appeal has apparently aligned itself with the reasoning found in the White opinion. In Krogen v. Krogen, 320 So.2d 483 (Fla. 3d DCA 1975), the court reversed a support award for an eighteen year old girl and ordered that the support for two minor children should cease when they reached age eighteen. In so doing, the court quoted at length from that part of the majority decision in White wherein that court had stated that a parent could not be required to assist a mentally and physically able eighteen year old child with his college education. The court did note that the Finn case could be read as being contrary to this ruling but suggested that the conflicting language in Finn was dictum and that Finn was supportable solely on the proposition that the statutes changing the age of majority were not to be applied retroactively.[3]
Decisions from the Fourth District Court of Appeal on this subject have been mixed. Shortly after the Finn decision, the court issued Briggs v. Briggs, 312 So.2d 762 (Fla. 4th DCA 1975). There, in holding that a parent could not be obliged to support a twenty-three year old son in college, the court said, "The recent case of Finn v. Finn ... seems to hold that dependency as a result of the bona fide pursuit of education may exist as to one between 18 and 21 years of age." 312 So.2d at 762. In Ulbrich v. Ulbrich, 317 So.2d 460 (Fla. 4th DCA 1975), the court continued along the same line of reasoning when it said:
We find no error in the requirement that child support continue until the child reaches 18 years of age or finishes high school, whichever is later. However, on remand, we think the provision should be amended to provide that said obligation does not extend beyond the child's 21st birthday (absent of course mental or physical deficiencies rendering him unable to support himself) in accordance with Finn v. Finn ... .
317 So.2d at 461.
However, in later decisions, the court has appeared to reject its and other courts' earlier lines of reasoning. The case of Kern v. Kern, 360 So.2d 482 (Fla. 4th DCA 1978), is an example. There, the court reversed an order modifying child support so as to require the father to pay $600 a month during the time in which the couple's adult child was attending college. The court framed the issue as being one of whether a parent in a dissolution proceeding, absent an agreement, could be required to provide a college education for an adult child of the marriage under the terms of a child support decree. The court held that a parent owes no duty of support to an adult child except in extraordinary circumstances, such as when the child suffers severe physical or mental incapacitation. Moreover, it ruled that even if such a duty of support were to exist, a dissolution proceeding would not be *505 the proper forum in which to determine that duty and that thus a divorce court has no jurisdiction to consider whether a parent should provide an adult child with a college education. The court reiterated its position in Genoe v. Genoe, 373 So.2d 940 (Fla. 4th DCA 1979), when it said, "A parent is not responsible for support after a child reaches his eighteenth birthday, absent legal dependence, and since attendance at college does not render a child a legal dependent, courts have no authority to require parents to furnish their offspring such advanced education." 373 So.2d at 942.
As in the case of other courts, this court has not spoken with one mind. In Kowalski v. Kowalski, 315 So.2d 497 (Fla. 2d DCA 1975), we considered an order which awarded support of $60 a week to a seventeen year old child until he reached the age of twenty-one or completed or discontinued his college education, whichever occurred first. We said:
While some of us may wonder why a father would expend the time, money and effort to complain to us because of an order compelling support of his son while the son attempts to secure a college education, we are nevertheless unaware of any authority in this state to enter such an order absent an agreement to that effect on the part of the father.
315 So.2d at 498. Accord, Coalla v. Coalla, 330 So.2d 802 (Fla. 2d DCA 1976).
On the other hand, later opinions of this court, while not explicitly so holding, have moved toward a notion that a court could order a parent involved in a dissolution proceeding to support an adult child in college. Cyr v. Cyr, 354 So.2d 140 (Fla. 2d DCA 1978), considered a situation where a husband was ordered to pay $25 a week support for each of his three young children. The trial court further stated that the order would be extended to any child at the time he attained age eighteen if at that time or shortly thereafter he became enrolled in an institution of higher learning and that in such case the support would continue until age twenty-one unless the child completed or terminated his education, married or died. This court found the extension provision to be improper and removed it. However, we noted that the trial court retained continuing jurisdiction to modify the terms of support so that when the child reached age eighteen it could determine whether it was a dependent child and thus eligible for further support. In other words, contrary to the holding of Kern v. Kern, a dissolution proceeding would be a proper forum in which to determine dependency.[4]
The most recent case in which we faced this issue was Rollings v. Rollings, 362 So.2d 700 (Fla. 2d DCA 1978). There the court dealt with an award of $200 a month support to an eighteen year old child. Although it reversed this award the court did say, "There is authority in this state to require continuance of support of dependent progeny past the age of majority, and, in certain instances, when they attend college." 362 So.2d at 701.
Upon reflection, we believe that in lowering the age of majority, the legislature did not intend to deprive worthy children of the funds needed to attend college. If this case came to us as an appeal from an order raising child support, we would be inclined to hold that in a dissolution proceeding a court could find a child under the age of twenty-one dependent by reason of attendance at college and order one or both of his parents to provide support. However, because of the posture of this appeal, it is unnecessary for us to take such a step now which would require us to overrule prior decisions. Suffice it to say that we are satisfied that we can decide this case under ordinary principles relating to increased alimony awards, confident that there is no fixed rule forbidding an order of increased child support to finance a child's college education up to the age of twenty-one.[5]
*506 As has often been noted, a court must base an award of alimony to a wife upon the ability of her husband to pay that award and her financial needs in light of the standard of living which she enjoyed during the marriage. E.g., Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Gensemer v. Gensemer, 383 So.2d 913 (Fla. 2d DCA 1980). Moreover, when subsequent to the original alimony award there has been a substantial change in her circumstances or financial needs which threatens her standard of living, she is entitled to an upward modification of the alimony which, of course, must be consistent with the husband's continued ability to pay. Canakaris v. Canakaris; § 61.14, Fla. Stat. (1979). Applying these rules to the facts of the present case, is becomes clear that the court was well within its authority when it increased Mrs. Nicolay's alimony. The record discloses that her standard of living during her marriage was such that she could rightfully expect to be able to provide her children with a college education, particularly since they were exceptionally bright and hence were outstanding candidates for college. It was not only logical but commendable that when Dr. Nicolay refused to provide further funds, she dipped into her modest resources for this purpose. Thus, because she suffered the extra financial burden of college expenses, it was indeed proper for the court to make an adjustment in her alimony to help her to maintain the standard to which she was accustomed.
AFFIRMED.
SCHEB, C.J., and CAMPBELL, J., concur.
NOTES
[1] The retroactive aspect of the order was included pursuant to stipulation of the parties.
[2] The case came to the supreme court from the Third District Court of Appeal which also had affirmed the trial court's order. Finn v. Finn, 294 So.2d 57 (Fla. 3d DCA 1974).
[3] It might be said that Krogen conflicts with the Third District's Finn decision. However, the latter opinion like the supreme court's Finn opinion mentioned the dependency question only in dictum.
[4] Accord, Fagan v. Fagan, 381 So.2d 278 (Fla. 5th DCA 1980).
[5] One might reasonably ask why a court could not order support for college for a child beyond the age of twenty-one since that age no longer has any statutory significance. The answer, we submit, is that while the legislature in lowering the age of majority to eighteen did not intend to eliminate any requirement for parents to pay their children's way through college, there is nothing to indicate that the legislature wished to enlarge parental obligations.